No. 33,435

GLEN W. DICKINSON THEATRES, INC., *Appellant*, v. F. BRINKER, as an Individual, doing business as the BRINKER OUTDOOR ADVERTISING COMPANY, *Appellee.*

(76 P. 2d 833)

Opinion filed March 5, 1938.

*Payne H. Ratner, Stuart T. McAlister, Louise Mattox,* all of Parsons, and *D. S. Hults,* of Lawrence, for the appellant.

*John B. Markham,* of Parsons, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for rescission of a contract and for return of a note given in connection therewith, in which defendant recovered on his cross petition for damages for breach of the contract. The plaintiff appeals.

The appellant contends that the trial court's findings of fact are contrary to the evidence, and that its conclusions of law are improper and not supported by the evidence, and that it erred in denying the motion for a new trial.

The appellant's petition stated two causes of action. The first was that it had entered into a contract with appellee for the construction and installation of a large sign on the theater of appellant at Parsons, Kan., the price to be $175 cash and a note for the face amount of $560, which included interest of $40, the note being payable in installments; that the appellee had breached the contract by ten specified failures, including therein recitation of certain claimed noncompliances in that the entire job was not properly installed, the sections of the sign not being properly lined up and not fitting at joints and corners; that the installation had not been completed in a reasonable time, and that the sign did not bear the underwriter's label of approval, nor did it have the union label, as required by the contract; that appellant had notified appellee that it rescinded the contract and for him to remove his materials and fixtures placed on the theater in attempted performance of the contract.

The second cause of action included the allegations of the first cause of action, and alleged damages of $5,000 by way of loss of receipts occasioned by failure of appellee to complete installation of the sign.

The prayer was for judgment rescinding the contract, for return of the note and for the damages.

Briefly stated, appellee's answer was that appellant had refused to permit him to properly and completely finish the sign, and that the contract was not subject to cancellation. By cross petition appellee alleged his performance under the contract, the refusal of appellant to permit him to fully perform; that appellant had breached the contract and that he had removed the sign; that the

sign was especially prepared for appellant's theater, and after breach by appellant he was able to salvage only certain materials, and that he had been damaged in the sum of $618.27, for which he prayed judgment. Following the trial, the court made twenty-seven findings of fact, later referred to, and rendered judgment in favor of appellee for $518.27.

For the reason appellant's argument is concerned principally with the matters hereafter discussed in detail, we shall summarize the findings of fact. It was found the sign was of special design and that it was necessary that it be manufactured in its entirety before it could be installed, and that the usual practice is to manufacture the parts and transport them to the place of installation; that appellee's manufacturing plant was at Coffeyville and the sign was to be erected in Parsons; that appellant's manager insisted the sign be installed at the earliest possible date to advertise a certain picture, and that it be installed section by section, as manufactured, and not to wait until all sections had been made, thus causing some delay; that further delay occurred because appellant's manager would not permit work while his show was in progress; that some further delay was occasioned by appellant's proposal to change certain lighting effects; that certain complaints with reference to glass work, letters and letter raceways were made and corrected, and that certain other matters complained of were due to the fact the installation was not completed.

Although the court's findings do not so state specifically, the evidence showed the sign was to be attached to and installed on a metal framework which seems to have been part of an awning or marquee on the front of the theater. Findings 15, 17, 18 and 20 were:

"15. The court finds that plaintiff complains that the entire job was not properly installed, each section not being properly lined up and fitting at the joints or corners. The court further finds that this sign was to be installed upon and attached to a certain steel framework or awning which was made of boiler tubing welded together and rigidly attached to the front of the building at the back, and the front end of which was supported by chains attached to the building above the framework and extending out to and attaching to the front of the awning; that said steel framework was approximately forty-nine feet and nine inches long and eight feet and six inches wide, and that said sign was to cover the entire outer surface of said steel framework on both the front and ends thereof, with the perpendicular width of the sign body of approximately two feet except the center section which was to be approximately five feet in width; that the steel framework of said awning was not true in shape, and with particular reference to the front horizontal level; that due to the irregularities in the framework of said awning, when the sign was at-

tached thereto by defendant, a perfect fit was not obtained at the corners and at the joints between the three sections, leaving a more or less irregular opening at said places; that the defendant had planned to cover said places with an ornamental molding before the job was complete; that while said sign was not perfectly level, due to the imperfection of the framework upon which it was erected, it was not observable to casual inspection and could only be determined by a particular inspection for that purpose.

"17. The court further finds that the plaintiff complains that said sign does not bear the underwriter's label of approval and is not wired according to the underwriter's code of specification, and the court further finds that said sign was wired in conformity with the underwriter's code, and that it is the custom and practice in work of this kind to wait until the installation is complete before inspection is made or approval given, and that had defendant been permitted to complete said job the wiring would have met the requirements of the underwriter's code and would have been approved.

"18. The court further finds that the plaintiff complains that the work does not bear the union label, and further finds that said work was being done by union men and when complete the union label would have been displayed upon said sign as required by said contract.

"20. The court further finds that the materials used by the defendant in the manufacture of said sign, and the quality of the work done upon same were without substantial defects and that said work, insofar as it had progressed, was in substantial compliance with the terms of said contract."

The court further found that appellant notified appellee if he did not remove the sign appellant would, and that thereafter appellee removed the sign, and—

"25. That had the defendant not been directed to discontinue said work by plaintiff in said letter, as aforesaid, that defendant would have completed said contract with satisfactory materials and workmanship in substantial compliance with the terms of said contract."

Appellant's principal complaint is that findings of fact 17 and 18 quoted above are not supported by the evidence. As to finding 17, it was shown when the sign was partially completed there was some trouble with the wiring and the chief of the fire department testified he then saw the sign; that he was familiar with the underwriter's code; that the materials in the job were all right but the workmanship was poor, but that the job was not then completed and he did not see it thereafter, although he did write appellant's manager suggesting that electric wires should be put in rigid conduit "in order that we may accept the same." His letter shows he was referring to some city code rather than to the underwriter's code. It was dated one day before the appellant in writing notified the appellee to remove the sign. Appellee, testifying in his own behalf, stated the underwriter's code did not require use of rigid conduit, and that the

sign did not bear the underwriter's approval because it could not be put on until the sign was completed and had been inspected by an agent for the underwriter. This evidence was not controverted.

It is contended that finding 18 is unsupported by the evidence. It is conceded by appellee that the union label was not on the sign. Appellant's contention is that as soon as the metal framework for the sign was completed, the label should have been attached, even though the sign was not completed. The contract stated:

"Complete job shall bear underwriter's label of approval and also to bear union label."

It did not require more. Coupled with the above is an argument that a workman who did some of the neon tube work was not a union man. He so testified. It seems conceded that otherwise the workmen were union men. But there is no showing that there was any union of those engaged in neon tube work or that the performance of a part of the manufacture by a nonunion man would prevent the attachment of the union label. There was a variance in the evidence as to when the label would be fixed on the job, whether on each part made by a separate craft, or when the job was completed. We cannot say that finding 17 is unsupported by the evidence. It may be that the statement the "work was being done by union men" is too broad; however, it is not made to appear that the conclusion that when complete the union label would have been displayed was incorrect or unsupported by the evidence.

Complaint is also made because the various sections of the sign did not fit snugly together. The trial court quite evidently gave considerable weight to the fact that the supporting frame on the building was not sufficiently rigid and that such failure as there was in that respect was attributable to the sag in the framework, to the fact that at appellant's insistence the sign was put up at various times as sections were completed, instead of as a completed unit, and to the further fact that by reason of appellant's action in breaching the contract the appellee was deprived of any opportunity to remedy such defects as might have developed owing to the method of installation.

Essentially this was a fact case. The contract was not disputed. Appellant told its story of performance thereunder, and appellee gave his version. The trial court decided that appellee was correct. Our examination of the record shows that there is substantial basis in the evidence to support the findings.

The trial court's conclusion of law based on the above findings of fact was correct and its judgment is affirmed.